**GERHARDT F. MEYNE CO. v. UNITED STATES.**

No. 45926.

Court of Claims.

April 5, 1948.

George E. Chadwick, of Washington, D. C. (Norman B. Frost and Frederick N. Towers, both of Washington, D. C., and George E. Weichelt, of Chicago, Ill., on the brief), for plaintiff.

Grover C. Sherrod, of Washington D. C., and Herbert A. Bergson, Asst. Atty. Gen., for defendant.

Before JONES, Chief Justice, and LITTLETON, WHITAKER, MADDEN, and HOWELL, Judges.

WHITAKER, Judge.

Plaintiff sues the defendant for damages for delaying it in the carrying out of its contract for the construction of 156 temporary buildings at Fort Sheridan, Illinois. It also sues for an additional amount to

which it claims it is entitled for certain concrete foundations and for the cost of road construction and maintenance. It has waived its claim for extra work on the Theater Building, its claim for interference with the carrying out of its contract by certain excavation for utilities, and its claim for overtime.

■ The first claim is for a delay caused by the defendant as a result of making a change in the drawings for the Theater Building. While work was proceeding on the foundations for this building the defendant gave plaintiff revised drawings for this building and requested a proposal for the doing of the work according to them. Plaintiff on February 7, 1941, proposed to do the work for an extra amount of $11,836.00. Its letter read in part:

"Complying with your request dated January 22nd, 1941, and received by this office on January 23rd, 1941, we propose to furnish the additional labor, material and equipment to build the Theatre Building— Type TH—3, at Fort Sheridan, Illinois, in accordance with drawings #700—1212.1 and #700—1224.1 as altered and approved by you on January 28th, 1941, for the sum of Eleven Thousand Eight Hundred and Thirty-six ($11,836.00) Dollars."

A month later, on March 6, 1941, it was advised that its proposal was accepted and it was ordered to proceed. The following day, however, plaintiff advised the defendant that since its proposal was submitted the ground had frozen and that access to the site had been made more difficult by an open ditch dug by the defendant adjacent to the building, and it requested an additional amount of $3,000 for the resulting increased costs and for damages due to the delay. Before getting a reply to this last request it resumed work.

Since its offer of $11,836 was still outstanding at the time the defendant accepted it, we are of opinion plaintiff is bound by it, and is not entitled to recover any more than the amount of it. Defendant did not accede to its request for additional compensation, and plaintiff proceeded with the work without insisting upon it. Instead, a little over a month after work had been resumed and about a month before the work was completed plaintiff submitted a revised proposal of $11,826 on account of the changes made in the drawings, which was $10 less than its original proposal; and it did not include anything for the additional cost claimed on account of the frozen ground or for the damages incident to the delay.

Defendant's acceptance of plaintiff's proposal was informal, but it was nevertheless accepted. Formal action was deferred until after completion and acceptance of all of the buildings. This was on November 28, 1941, when Change Order "M" was issued, covering this item as well as other items. The statement of the facts with reference to the issuance of this Change Order is reserved until after the facts with reference to the other claims have been stated.

■ Plaintiff's next claim is for delay incident to a change in the location of buildings 155, 156, 157, and 158.

After the foundations for buildings 155, 156, 157, and 158 had been substantially completed, the defendant ordered the work on these buildings to be stopped and presented plaintiff with a plan showing new locations for these buildings, and requested a proposal for the additional cost due to this change. Plaintiff on February 7, 1941, submitted a proposal for $2,972. A month later, on March 6, 1941, it was advised that its proposal was accepted, and it was ordered to proceed. As in the case of the Theater Building, plaintiff then advised the defendant that it would need additional compensation of $1,000 for the delay and because in the meantime the ground had frozen. Before receiving any reply thereto it resumed work.

Nearly a month later it submitted a revised proposal for the additional work required incident to the change of location in these buildings in the amount of $2,417. This was about $500 less than its original proposal, and it did not include anything on account of the $1,000 claimed for the delay and for the additional work required incident to the freezing of the ground.

For the reasons stated in connection with the change on the Theater Building, we think it is bound by its offer.

Plaintiff's next claim is for additional concrete work incident to the location of some of the buildings adjacent to ravines. The plans and specifications accompanying the request for bids made it possible to compute the quantities of excavation and concrete only if the buildings were located on level ground; the exact location for the buildings was not given until after the contract had been awarded. Some of them were actually located on level ground, but others were located at places where they projected partly into deep ravines. This necessitated higher foundations than plaintiff had bid upon. Defendant advised plaintiff that the additional work required by these locations would be paid for at the unit prices set forth in the contract.

On April 16, 1941, plaintiff submitted a proposal of $39,354.36 for the extra work, but since it was not itemized by quantities no action was taken thereon. No further proposal was submitted until after all the work had been completed, when plaintiff submitted a proposal covering this claim as well as its other claims. This was followed by issuance of Change Order "M," above referred to.

Plaintiff's last claim is for the cost of road maintenance made necessary by the closing of the entrance to Patten Road over which it had planned to haul its materials.

In paragraph SC–13 the specifications provided:

"Entrance for trucks shall be at South Gate of reservation, over Walker Avenue, Highwood, Illinois, via Patten Road to site. If necessary, contractor shall reinforce the steel bridges on Patten Road over which the trucks must pass by the installation of vertical posts, struts, etc., sufficient to support the truck loads."

Patten Road was a paved highway. It led to other paved highways which provided ready ingress and egress to the project. Just about the time plaintiff was about to begin work on the project the military authorities ordered the south entrance to Patten Road closed. This made it necessary for plaintiff to construct a temporary road from the substituted entrance to an existing unpaved road, and it also made it necessary for it to put surfacing material on this unpaved road. On April 15, 1941, plaintiff presented a claim of $2,500 for the cost of this roadway construction and maintenance. No action was taken on this claim until after all the work had been completed and plaintiff had submitted a claim covering all items.

The above is a brief statement of the facts in connection with the several claims on which plaintiff sues.

After all the work had been completed plaintiff submitted a claim on August 27, 1941, in the sum of $97,511.35 covering the above items and also others.

In the claim of August 27, 1941, plaintiff asked not only for the amount of its revised proposals on the Theater Building change and the change in location of buildings 155, 156, 157, and 158, but also for the additional amounts of $3,000 and $1,000 for its extra costs incident to the delay in acting on the proposals. It claimed $31,669.96 for the additional concrete work computed at the unit prices set out in the contract, and in addition for the sum of $7,570.95, claiming that the unit prices were not applicable to this character of foundation work, which it said was more expensive to construct in the amount of $7,570.95. It renewed its claim for the cost of road maintenance and construction in the amount of $2,500.

The Construction Quartermaster asked for a conference with plaintiff on its claims. As shown by the findings, he told plaintiff he would not pay it more than its revised proposals on the Theater Building change and the change in the location of buildings 155 to 158, and would not pay anything for the extra cost incident to the delay. He further insisted that plaintiff was only entitled to $26,513.15 for the additional concrete work, computed at unit prices stated in the contract, and he refused to pay any amount for the cost of road construction and maintenance. Other items of the claim he agreed to pay in whole or in part and others he refused to pay altogether. His action on each item is set out in finding 7. The total amount he agreed to pay was

$42,130.57. He told plaintiff that if it would submit a proposal accordingly, its claim would be paid.

Plaintiff then, on November 19, 1941, wrote the contracting officer a letter, the first paragraph of which reads:

"We give you below as requested a recapitulation of certain items and extensions of time to the above contract for Temporary Housing at Fort Sheridan, Illinois."

There followed a statement of items in accordance with the understanding with the Construction Quartermaster. In it there was claimed $11,826 for the Theater Building change, $2,417 for the cost of the relocation of buildings 155 to 158, $26,513.15 for the extra concrete work, and nothing for the cost of road construction and maintenance. Nothing was set out for damages for delay incident to the Theater Building change, and to the relocation of buildings 155 to 158. The other items claimed or omitted were in accordance with the understanding with the Construction Quartermaster. This was followed by the issuance of Change Order "M" on November 28, 1941. In it there were listed the items and amounts as set out in plaintiff's letter of November 19, 1941. After listing the items it was recited: "The above is in accordance with your quotation of November 19, 1941." It was further recited:

"The contract price in accordance with Article 3 of the general provisions of the contract is hereby increased by the sum of Forty-two Thousand One Hundred Thirty Dollars and Fifty-seven Cents ($42,130.57), and extends the contract date as listed above."

The contractor was paid the amounts stated and it signed a release on January 7, 1942, excepting therefrom, however, the items and amounts which the Construction Quartermaster would not include in Change Order "M."

No appeal was taken from the action of the construction quartermaster.

Article 15 of the contract made final decisions of the contracting officer on questions of fact, subject to appeal.

■ The question of the amount due for the extra concrete work computed at the unit prices set out in the contract is a question of fact. The contracting officer found that this amount was $26,513.15. This finding is final and conclusive, since there was no appeal to the head of the department. United States v. Blair, 321 U.S. 730, 64 S.Ct. 820, 88 L.Ed. 1039; United States v. Holpuch, 328 U.S. 234, 66 S.Ct. 1000, 90 L.Ed. 1192.

The time for appeal expired on December 28, 1941. No appeal or any further action was taken within that time. After jurisdiction over this contract had been transferred from the Quartermaster Corps to the Office of the Chief of Engineers on December 16, 1941, the plaintiff filed with the Area Engineer a claim covering all those items disallowed by the Construction Quartermaster. This was on February 16, 1942. The Area Engineer considered it and wrote to the Chief of Engineers recommending disallowance of all claims except $350.00. The Chief of Engineers concurred and so recommended to the Comptroller General. However, this consideration by both the Area Engineer and the Chief of Engineers was purely gratuitous. Neither of them was under any obligation to do so. Plaintiff's right to demand consideration of its claim by the head of the department or his authorized representative had expired on December 28, 1941, two and a half months before the claim was filed with the Area Engineer. Plaintiff is foreclosed by the action of the Construction Quartermaster on the amount due for the extra concrete computed at unit prices.

■■ However, the question of whether or not the contract called for payment for this extra concrete work at unit prices calls for a construction of the contract in the light of the conditions surrounding its performance. This is not the sort of question which it was intended by article 15 to leave to the final decision of the contracting officer. The general rule is that the construction of contracts is a question to be determined by the court. Hamilton v. Insurance Co., 136 U.S. 242, 255, 10 S.Ct. 945, 34 L.Ed. 419; Drainage District No. 1 v. Rude, 8 Cir., 21 F.2d 257; Kress & Co. v. Fisher, 4 Cir., 65 F.2d 682, and numerous other cases cited by Williston on Con-

tracts, Rev.Ed. 1772, note 2. The contracting officer was not authorized to decide such questions, even if he could have been, and, hence, his decision thereon is not binding.

The plans for the buildings showed no concrete foundations more than one foot above the ground. The foundations for which this extra is claimed extended high above the ground, sometimes as high as 11 feet. The proof shows that the erection of such foundations is more expensive than foundations below or approximately level with the ground. More forms and stronger forms are needed for it and the pouring of the concrete in the forms is more difficult. Where the foundations do not extend more than a foot above the ground the concrete can be dumped from the truck or wheelbarrow directly into the excavation for the foundations, whereas, if the foundations extend considerably above the ground, scaffolding must be erected; the concrete must be carried up to the scaffold and from there it is poured into the forms.

■ The unit price bid for concrete did not apply to foundations extending high above the ground; the plans showed none more than one foot above the ground. Paragraph SC-16 of the specifications, relating to unit prices, recited:

"They will apply only when such changes involve materials, specifications, methods and designs the same as those required in like work shown and/or specified. They will not be applied to changes requiring the use of materials, specifications, methods or designs of different character from those approved for general use under the contract as originally drawn * * *."

Since the construction of foundations high above the ground is quite a different operation from constructing them below the ground or on an approximate level with it and is much more expensive, we are of opinion that such foundations come within "changes requiring the use of materials, specifications, methods and designs of a different character from those approved for general use under the contract as originally drawn." To such changes unit prices do not apply.

■ The Commissioner has found, and the evidence supports his finding, that the extra cost of their construction above the unit prices was $7,570.65. We are of opinion plaintiff is entitled to recover this amount on account of this item.

Whether or not plaintiff is entitled to recover for road maintenance and construction also calls for a construction of the contract and is a question of law.

■ The specifications clearly contemplated the use of Patten Road and other paved roads. It read:

"SC-13. Entrance for Trucks.—Entrance for trucks shall be at South Gate of reservation, over Walker Avenue, Highwood, Illinois, via Patten Road to site. If necessary, contractor shall reinforce the steel bridges on Patten Road over which the trucks must pass by the installation of vertical posts, struts, etc., sufficient to support the truck loads."

This was a representation that such roads were available and plaintiff's bid was, of course, based upon it. This promise was not carried out and plaintiff is entitled to recover whatever extra expense to which it was put as a result.

This case differs from those cited by defendant in that here there was a direct promise that these roads would be available; there was no such promise in Hallman v. United States, 68 F.Supp. 204, 107 Ct.Cl. 555. In none of the other cases cited by defendant was there a promise that if costs were increased as the result of the exercise of a sovereign power defendant would pay the increase. We have here that implied promise. Defendant represented these roads would be available, from which it is to be implied that if they were not, the defendant would stand the increased cost.

Defendant cannot enter into a binding agreement that it will not exercise a sovereign power, but it can say, if it does, it will pay you the amount by which your costs are increased thereby. United States v. Bostwick, 94 U.S. 53, 69, 24 L.Ed. 65; Sunswick Corp. v. United States, Ct.Cl., 75 F.Supp. 221.

The Commissioner has found that plaintiff's costs were increased thereby in the sum of $1,904.64. The defendant excepts thereto, but we are not convinced that the finding is in error and we have adopted it.

Plaintiff is entitled to judgment on this item of $1,904.64.

We have said above plaintiff is not entitled to recover any further amount on account of the Theater Building change and the relocation of buildings 155, 156, 157, and 158, although we think it might have recovered the amounts of its original proposals except for the fact that it accepted the amount of its revised proposal and released defendant from liability for any further amount except for damages for delay.

On the whole case plaintiff is entitled to recover from the defendant the sum of $9,475.29. Judgment for this amount will be entered.