James W. Meyers, Asst. U. S. Atty., for the United States.

Before CHAMBERS and BROWNING, Circuit Judges.

PER CURIAM:

After notice and a hearing, Henry W. Sands, a member of the bar of this court, is assessed a penalty of Five Hundred

**PREMIER ELECTRICAL CONSTRUC-**
**TION COMPANY, a corporation,**
**Plaintiff-Appellant,**

v.

**UNITED STATES of America,**
**Defendant-Appellee.**

**No. 71-1706.**

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 27, 1972.

Decided Jan. 23, 1973.

A. Denison Weaver, Chicago, Ill., for plaintiff-appellant.

Harlington Wood, Jr., Asst. Atty. Gen., Civil Division, James C. Hair, Jr., U. S. Department of Justice, Washington, D. C., James R. Thompson, U. S. Atty., William T. Huyck, Asst. U. S. Atty., Chicago, Ill., for defendant-appellee.

Before KILEY and STEVENS, Circuit Judges, and ESCHBACH, District Judge.*

STEVENS, Circuit Judge.

Plaintiff, a contractor, appeals from a summary judgment denying its claim for extra compensation to cover costs incurred because an access road became impassable during the construction of an approach light system at the Minneapolis-St. Paul International Airport. The general contracting officer, the Department of Transportation Contract Appeals Board, and the District Court all rejected plaintiff's contention that the contract contained a warranty of access to the job site. We affirm.

The approach light system for Runway 29 spanned the Minnesota River to the southeast of the airport. The contract specifications described the different means of access to the several construction sites on the two sides of the river. The access road involved in this controversy was identified in specification section 1–04 as "County Aid Road 31." That section, which is entitled "Access to Site," contains the following language which is relied upon as creating the warranty:

"Separate means of access to different portions of the ALS *will be provided* since Minnesota State Highway No. 5 and the Minnesota River both intersect the proposed ALS. . . . Access to the job at the southeast side of the Minnesota River will be along State Highway 13 to Mendota, Minnesota; then along County Aid Road 31, which is asphalt for some distance but changes to gravel before reaching the proposed ALS area." (Emphasis added.)

In the spring following the execution of the contract, an early thaw turned Road 31 into an impassable sea of mud. In order to complete its contract, plaintiff was forced to barge heavy equipment and men to the job site via the river at an additional cost, for which it seeks reimbursement.

We are not presented with the question whether the spring thaw should be considered an "Act of God" excusing a party from his obligation to complete the contract. Rather, the first question is whether the condition which developed was one which the government had promised to correct at its expense. A fair reading of the entire contract persuades us that the language relied upon by plaintiff does not create such an obligation. That language, we believe, is merely descriptive of the means of access available. There is no claim of misrepresentation; nor was there inadequate disclosure of facts known to the government and un-

* District Judge Jesse E. Eschbach of the Nortehrn District of Indiana is sitting by designation.

available to the contractor. Under the terms of the agreement, the district court correctly held that the contractor had assumed the risk of this unanticipated expense.

Nor can we accept plaintiff's argument that United States v. Spearin, 248 U.S. 132, 39 S.Ct. 59, 63 L.Ed. 166, authorizes recovery for breach of an "implied warranty of specification suitability." In *Spearin* the Court held extra costs resulting from the failure of a sewer built by the contractor in accordance with the government's specifications were the responsibility of the government because the specifications were defective. But the Court first stated the general rule:

> "Where one agrees to do, for a fixed sum, a thing possible to be performed, he will not be excused or become entitled to additional compensation, because unforeseen difficulties are encountered. Day v. United States, 245 U.S. 159, 38 S.Ct. 57, 62 L.Ed. 219; Phoenix Bridge Co. v. United States, 211 U.S. 188, 29 S.Ct. 81, 53 L.Ed. 141." 248 U.S. at 136, 39 S.Ct. at 61.

In the case before us, the additional cost of barging men and material to the job site was not the consequence of any defect in the specifications; rather, as we interpret *Spearin,* such cost was caused by the unforeseen difficulties which the plaintiff encountered.

Plaintiff also relies on Gerhardt F. Meyne v. United States, 76 F.Supp. 811, 815–816, 110 Ct.Cl. 527 (1948). In *Meyne,* the government exercised its sovereign power to close the only access road but disclaimed responsibility for the additional cost resulting from its own act. The Court of Claims construed the *Meyne* contract as containing a direct promise

by the government that the particular access road would be available. The language of the *Meyne* contract is somewhat different from that before us; but most importantly, there is no parallel between impassability caused by the forces of nature, as here, and impassability caused by the government's conduct as in *Meyne.*[1]

The judgment is

Affirmed.

---

1. "Defendant cannot enter into a binding agreement that it will not exercise a sovereign power, but it can say, if it does, it will pay you the amount by which your costs are increased thereby. United States v. Bostwick, 94 U.S. 53, 69, 24 L.Ed. 65; Sunswick Corp. v. United States, 75 F.Supp. 221, 109 Ct.Cl. 772." 76 F.Supp. at 815. In *Sunswick,* the Court of Claims stated: "In a number of

instances we have discussed the principle that it is an implied condition of every contract that neither party will hinder the other in his discharge of the obligations imposed upon him, nor increase his cost of performance. . . ." Sunswick Corp. v. United States, 75 F.Supp. 221, 224, 109 Ct.Cl. 772 (1948) (citations omitted).